IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IRVING V.R.[1], <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil No. 23-1533 (GLS) |

**OPINION AND ORDER**

Plaintiff seeks review of the Commissioner of the Social Security Administration's (the "SSA") denial of his application for Social Security Disability Insurance benefits ("SSDI"). Docket No. 1. Plaintiff sustains that the decision should be reversed because it was not supported by substantial evidence. Docket No. 13. The Commissioner opposed and Plaintiff replied. Docket Nos. 16, 17. The parties consented to the entry of judgment by a U.S. Magistrate Judge under the provisions of 28 U.S.C. §636(c). Docket No. 11. After careful review of the administrative record and the parties' briefs, the Commissioner's decision denying disability benefits is **REMANDED** for proceedings consistent with this opinion.

**I.      Procedural Background**

Plaintiff worked as a supply technician for the U.S. Department of Defense at a military base until April 9, 2021. Tr. 34, 51.[2] On June 8, 2021, Plaintiff filed an application for SSDI claiming that, as of April 2, 2021, the following conditions limited his ability to work: degenerative thoracic interval disc, back spasm pain, scoliosis, bilateral radiculopathy, chronic sinusitis, allergic rhinitis, chronic migraine headache, tension headache, anxiety disorder, mayor depression disorder, mild obstructive sleep apnea, high blood pressure ("HBP"), right shoulder cuff tendonitis,

---

[1]      Plaintiff's last name is omitted for privacy reasons.

[2]      "Tr." refers to the transcript of the record of proceedings.

hypertensions renal disease, prediabetes, right and left foot pain, plantar fasciitis on both feet, bilateral carpal tunnel syndrome on both hands, tinnitus, and high cholesterol. Tr. 847. Plaintiff received treatment at the U.S. Department of Veterans Affairs, as evidenced by his disability report. The application was denied initially and upon reconsideration. Tr. 847-866. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and, on August 9, 2022, a hearing was held via telephone before ALJ Livia Morales. Tr. 43-67. Plaintiff testified and was represented by counsel. Id. Vocational Expert ("VE") Yamile García Acevedo testified at the hearing. Id. On March 15, 2023, the ALJ issued a decision finding that Plaintiff was not disabled, as defined in the Social Security Act, at any time from the onset date of April 2, 2021, through the date of the decision. Tr. 23-36. Plaintiff asked the Appeals Council to review but the request was denied on August 22, 2023, rendering the Commissioner's decision the final decision for review by this Court. Tr. 1-5. On October 23, 2023, Plaintiff initiated this action and both parties filed memoranda in support of their respective positions. Docket Nos. 13, 16, 17.

## II.    Legal Framework

### A.    Disability Determination by the SSA: Five Step Process

To receive benefits under the Social Security Act, the ultimate question is whether plaintiff is disabled within the meaning of 42 U.S.C. §423(d). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See id. The severity of the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." 42 U.S.C. §423(d)(2)(A). The burden of proving disability rests on plaintiff. 42 U.S.C. § 423(d)(5)(A); Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

The Commissioner engages in a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §404.1520; Bowen, 482 U.S. at 140-42. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. 20 C.F.R. §404.1520(b). If not engaged in substantial gainful activity, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities. 20 C.F.R. §404.1520(c). The step two severity requirement imposes a *de minimis*

burden, which is designed to screen out groundless claims. McDonald v. Secretary, 795 F.2d 1118, 1123 (1st Cir. 1986). If the impairment or combination of impairments is severe, the third step applies. The ALJ must determine whether the claimant's severe impairments meet the requirements of a "listed impairment", which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. See 20 C.F.R. §404.1520(d); 20 C.F.R. Part 404, Subpart P, App. 1. If the claimant has a "listed impairment" or an impairment equivalent in severity to a "listed impairment", the claimant is considered disabled. If the claimant's impairment does not meet the severity of a "listed impairment", the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. §404.1520(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations due to impairments. 20 C.F.R. §404.1520(e); §404.1545(a)(1). At step four, the ALJ must determine, taking into consideration the RFC, whether the claimant can perform past relevant work. 20 C.F.R. §404.1520(f); §416.920(f). If not, then the fifth and final step applies.

At steps one through four, the claimant has the burden of proving he cannot return to his former employment due to the alleged disability. Santiago v. Secretary, 944 F.2d 1, 5 (1st Cir. 1991). However, at step five, the Commissioner has the burden to prove the existence of other jobs in the national economy that claimant can perform. 20 C.F.R. §404.1520(g); Ortiz v. Secretary of Health & Human Services, 890 F.2d 520, 524 (1st Cir. 1989). If there are none, the claimant is entitled to disability benefits. 20 C.F.R. §404.1520(f).

B.  **Standard of Review**

The Court may affirm, modify, reverse, or remand the decision of the Commissioner based on the pleadings and transcript. 42 U.S.C. §405(g). The Court's role is limited to deciding whether the ALJ's decision is supported by substantial evidence in the record and based on a correct legal standard. See id.; Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Manso-Pizarro v. Secretary, 76 F.3d 15, 16 (1st Cir. 1996); Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla." It is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). Under the substantial evidence standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient

evidence' to support the agency's factual determinations" and "the threshold for such evidentiary sufficiency is not high". Biestek v. Berryhill, 587 U.S. 97, 103-04 (2019).

A determination of substantiality must be based on the record. Ortiz, 955 F.2d at 769. It is the Commissioner's responsibility to weigh credibility and to draw inferences from the evidence. Rodríguez v. Secretary, 647 F.2d 218, 222 (1st Cir. 1981). Courts will not second guess the Commissioner's resolution of conflicting evidence. Irlanda Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings must be upheld if a reasonable mind, viewing the evidence in the record, could accept them as adequate to support his conclusion. Rodríguez, 647 F.2d at 222. And even if there is substantial evidence, which could arguably justify a different conclusion, the Court must uphold the ALJ's decision if supported by substantial evidence. 20 C.F.R. §404.1546(c); Rodríguez Pagán v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir.1987).

### III.   Discussion

#### A.   The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 2, 2021, the alleged onset of disability. Tr. 25. At step two, the ALJ determined that Plaintiff had severe impairments pursuant to 20 C.F.R. §404.1520(c): right foot degenerative joint disease, status post-surgery, left foot degenerative joint disease, status-post bunionectomy, right shoulder bursitis, osteoarthritis, carpal tunnel syndrome, degenerative disc disease of the cervical and lumbar spine, lumbar spine radiculopathy, thoracic spine disorder, anxiety disorder, major depressive disorder, and panic disorder. Id. The ALJ further found that Plaintiff had several impairments that were not severe as these did not significantly impair his ability to perform basic work-related activities. Tr. 26. The ALJ classified Plaintiff's HPB, dyslipidemia, obstructive sleep apnea, migraine headaches, sinusitis, allergic rhinitis, tinnitus, and prediabetes as non-severe impairments. Id. Plaintiff's non-severe impairments, along with his severe impairments, were accounted for in the RFC. Id.

At the third step of the sequential analysis, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of a "listed impairment" in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. The ALJ concluded that the "Paragraph B" criteria were not met because Plaintiff's mental impairments did not result in at least one extreme or two marked limitations in a broad area of functioning. Tr. 27-28. Having concluded step three of the

analysis, the ALJ proceeded to determine Plaintiff's RFC. Tr. 28. The ALJ stated that, in formulating the RFC, she considered all impairments, including those that were non-severe (Tr. 25-26), and that her findings regarding Plaintiff's mental functioning were also considered. The ALJ concluded that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. 404.1567(b), except:

> [T]hat the claimant can stand and walk 4 hours in an 8-hour day. He can reach overhead with the right upper extremity. He can frequently handle and finger with the bilateral upper extremities. The claimant can climb ramps and stairs occasionally, never climb ladders, ropes or scaffolds, balance frequently, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. The claimant can never work at unprotected heights, can work around moving mechanical parts occasionally, and operating a motor vehicle occasionally. The claimant is able to perform simple, routine tasks; is able to perform simple work-related decisions; is able to interact with supervisors, frequently; is able to interact with coworkers, frequently; is able to interact with the public, never. He needs a cane for walking.

Tr. 28. The ALJ then concluded that Plaintiff could successfully adjust to other work that existed in significant numbers in the national economy, such as a marker, office helper, and mail clerk. Id. at 35. The ALJ found that Plaintiff was not disabled. Id. at 36.

### B.      Plaintiff's Allegations of Error

Plaintiff moves to reverse the Commissioner's decision on the following grounds: (1) there were inconsistencies between the RFC and the VE testimony, (2) the decision is in conflict with Social Security Regulation 00-4p ("SSR 00-4p"), and (3) the medical evidence was not fully accounted by the ALJ in formulating the RFC. For the reasons discussed below, the Court finds that a remand is warranted.

#### 1.      The Vocational Testimony

Petitioner challenges the ALJ's reliance on the VE's testimony because the ALJ's hypothetical omitted Plaintiff's need of a cane to perform light level work. Docket No. 13. The Commissioner does not contest that the ALJ did not include the cane limitation in her initial hypothetical questions to the VE. Docket No. 16 at p. 7. The Commissioner responds, however, that the subsequent hypotheticals presented to the VE included more restrictive limitations so that the VE have a "broad basis under which to make a determination." Id. at p. 8 ("[...] she was building upon earlier hypotheticals when she asked [the VE] to consider the vocational impact of cane use and a limitation to frequent handling and fingering.").

An ALJ often calls upon a VE to testify about what jobs, if any, a hypothetical person with specified limitations may perform. If the ALJ reaches the final step of the five-step process, the ALJ may rely — as the ALJ did here — on the VE's testimony. In addressing challenges to an ALJ's reliance on that testimony, "our legal inquiry hinges on the nature of the ALJ's question[s] [to the VE]." Leach v. Kijakazi, 70 F.4th 1251, 1255 (9th Cir. 2023). For the VE's opinion to constitute substantial evidence, "the ALJ must pose [ ] hypothetical question[s] which compromise[ ] all of the claimant's impairments." Bowie v. Comm'r of Soc. Sec., 608 F.Supp.3d 1000, 1205 (M.D. Fl. June 22, 2022) (cleaned up). "If the ALJ presents the [VE] with incomplete hypothetical questions, the [VE's] testimony will not constitute substantial evidence." Jacobs v. Comm'r of Soc. Sec., 520 F. App'x 948, 950 (11th Cir. 2013). See also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting DeLorne v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991)) ("If an ALJ's hypothetical does not reflect all of the claimant's limitations, then 'the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'"). Likewise, if an ALJ incorrectly summarizes a claimant's limitations, courts ordinarily must reverse and remand, unless the error was inconsequential. Leach, 70 F.4th at 1255.

Here, the ALJ determined that Plaintiff has an RFC for light work except with certain physical and mental limitations. The physical limitations include the use of a cane for walking. Tr. 28. A VE testified during the hearing. The ALJ asked the VE if a hypothetical person with certain limitations could perform jobs in the national economy. The discussion proceeded as follows:

[…]

>  **ALJ**: He can [] kneel, crawl, and crouch, which would be occasionally. He can never be exposed to unprotected heights. He can be exposed to moving mechanical parts and operate a motor vehicle, which would be occasionally. He can also have contact with supervisors and coworkers frequently and occasionally with the public. Could this hypothetical person perform those same jobs that you just named?
>
> **VE**: Let me check. Yes, Your Honor, he could.
>
> **ALJ**: Ok. And if this person is limited to the same limitations, except that he can stand and walk four hours in an eight-hour day. And he also has -- and he can't have contact with the public. Can he do those same tasks or any others?

6

**VE**: Let me check. With the walking period, could he switch to sedentary work? Well, there would be light work. It requires less time on your feet as well.

**ALJ**: O[k].

**VE**: OK, marker. DOT number --

**ALJ**: Marker?

**VE**: Yes. 209.587-034. Light, specific vocational preparation of two. And 137, 814 jobs in the national economy. Toll collector --

**ALJ:** And this is occasional contact with the public. I said it was never.

**VE**: Oh, marker doesn't have any contact with the public. The toll collector -- well, the DOT doesn't mark it as having frequent contact with the public. But, yes, I believe it does. Office helper.

**ALJ**: OK.

**VE**: DOT number 239.567-010. Light, specific vocational preparation of two, and approximately 10,464 jobs in the national economy. And one moment. And mail clerk. DOT number 209.687-026. Light, specific vocational preparation of two, and approximately 12,281 jobs in the national economy.

**ALJ**: If that person were limited to the same limitations for the sedentary level, are there other jobs that this person could do?

**VE**: Yes, let me check. At the sedentary level. Surveillance monitor, DOT number 379.367-010. No, I take that back. There's contact with the public. Addresser, DOT number 209 --

**ALJ**: One moment, please. One moment.

**VE**: Yes, sorry.

**ALJ**: O[k], 209.

**VE**: 587-010. Sedentary, specific vocational preparation of two, and approximately 2,079 in the national economy. The second one would be document preparer, DOT number 249.587-010. Sedentary, specific vocational preparation of two, and approximately 16,957 jobs in the national economy. One moment. And the third one, let me check. The third one would be escort vehicle driver, DOT number 919.663-022. Sedentary, specific vocational preparation of two, and approximately 37,516 jobs in the national economy.

**ALJ**: And this one also -- let me see.

7

> **VE**: It doesn't have frequent contact with the public.
>
> **ALJ**: O[k]. And operating a motor vehicle is occasional?
>
> **VE**: No. No, Your Honor. Sorry. Let me substitute. One moment. Tube operator, DOT number
>
> --
>
> **ALJ**: Which one?
>
> **VE**: Tube operator. As in "tube."
>
> **ALJ**: O[k].
>
> **VE**: Operator. 239.687-014. Sedentary, specific vocational preparation of two, and approximately 2,097 in the national economy.
>
> **ALJ**: O[k], and if this person needs a cane to walk, could he do those jobs?
>
> **VE**: Yes, he could do these sedentary jobs.
>
> **ALJ**: If this person is limited to handling and fingering frequently, could he do those jobs and the other jobs that you mentioned?
>
> **VE**: Let me check. Yes, he could do those jobs. Let me check the light jobs I mentioned earlier. Which were marker, he could do that one. Router clerical, he could do. Mail clerk, he could do. Both routing clerk and router, he could do.
>
> [...]

Tr. 62-64.

The Court acknowledges that the first hypothetical presented to the VE did not include Plaintiff's cane limitation. But subsequent hypotheticals accounted for such limitation. While discussing sedentary level jobs, which are more restrictive than light level jobs, the ALJ inquired whether a person engaging in the sedentary level jobs mentioned by the VE could perform the jobs while needing a cane to walk. The VE affirmed. The ALJ then asked if "this person" – the person who needs a cane to walk – could perform the jobs mentioned despite being limited to handling and fingering frequently. The VE answered that the person who needs a cane to walk and is limited to handling and fingering frequently could perform both the sedentary level jobs and the light level jobs mentioned earlier: router, mail clerk, and marker. After a careful review of the VE testimony, the Court concludes that the hypothetical questions posed by the ALJ accounted for Plaintiff's cane limitation, consistent with the RFC assessment. Remand is unwarranted on this ground.

### 2.     Potential Conflict with SSR 00-4p

Plaintiff also argues that the ALJ did not comply with Social Security Regulation 00-4p because she did not resolve the conflict between the VE's testimony and the DOT. Docket No. 13. Specifically, Plaintiff contends that the ALJ failed to resolve the inconsistency between the DOT and Plaintiff's cane limitation given that the DOT does not account for the use of a cane. Id. at pp. 14-15. SSR 00-4p requires that "[w]hen vocational evidence provided by a VE [...] is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE [...].". SSR 00-4p, 2000 WL 1898704, at *4. But the ALJ "need only resolve such conflicts where they are apparent and have been identified." Ariel R.L. v. Comm'r of Soc. Sec., 2024 WL 4343573, at *6 (D.P.R. Sept. 30, 2024) (quoting Cruz Madera v. Saul, 2021 WL 9100419, at *13 (D.P.R. Feb. 26, 2021)); SSR-00-4p, 2000 WL 1898704, at *4; Carey v. Apfel, 230 F.3d 131, 146-47 (5th Cir. 2000) ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing."). Plaintiff's representative did not object to the purported conflict during the hearing or inquire on the issue. Tr. 65-66. After listening to the VE's explanation, Plaintiff's representative posed a hypothetical to the VE regarding Plaintiff's limitations but no more. Tr. 66 ("Thanks for the information. [...] That's it."). Because the inconsistency was not identified during the hearing, the ALJ was not required to explain the conflict. Cruz Madera, 2021 WL 9100419, at *13. There was no violation of SSR 00-4p.

### 3.     RFC Determination

Plaintiff next claims that the ALJ failed to fully account for his medical evidence, which would have led to a more restrictive RFC. Docket No. 13 at pp. 15-16. The Commissioner counters that the ALJ considered the evidence on the record and based her decision on substantial evidence. Docket No. 16. And that Plaintiff failed to show that a reasonable person would have been compelled to reach a different conclusion.

The Social Security defines an RFC as the most an individual can do despite his limitations. 20 C.F.R. § 404.1545. In determining an RFC, all recorded medically determinable impairments that are suffered by claimant are considered, including non-severe impairments. Id. Because "a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Olivera-Bahamundi v.

9

Comm'r of Soc. Sec., 2021 WL 1177339, at *5 (D.P.R. Mar. 29, 2021) (citations omitted). The ALJ must base the determination on all relevant evidence, including plaintiff's medical record, medical opinions, and his description of his limitations. See Vázquez-Velázquez v. Comm'r of Soc. Sec., 2021 WL 9275723 at, *5 (D.P.R. Sept. 23, 2021); 20 C.F.R. §§ 404.1545, 404.1546.

### a. Physical RFC Assessment

Plaintiff challenges the physical RFC assessment in general terms. See Docket No. 13 at pp. 15-16. In his reply, Plaintiff explains that the ALJ erred because the RFC "does not reconcile" with Plaintiff's "extensive physical examination abnormalities, along with the abnormal EMG results[,]" which suggest a more restrictive RFC. Docket Nos. 13, 17. The Commissioner counters that substantial evidence supports the RFC assessment. Docket No. 16 at pp. 4-7.

Generally, the ALJ is a lay person who is unqualified to interpret "raw technical medical data." Berrios v. Sec'y of Health & Hum. Servs., 796 F.2d 574, 576 (1st Cir. 1986). As such, the ALJ should not formulate an RFC based on a bare medical record. Gordils v. Sec'y of Health & Hum. Servs., 921 F.2d 327, 329 (1st Cir. 1990). The ALJ must also avoid substituting uncontroverted medical opinion for his own impressions and needs a medical expert to "translate medical evidence into functional terms." Segundo-Méndez v. Comm'r of Soc. Sec., 2023 WL 6356644, at *10 (D.P.R. Sept. 29, 2023). But an ALJ may render a common-sense judgment regarding an individual's capacities, so long as he "does not overstep the bounds of a lay person's competence and render a medical judgment." Gordils, 921 F.2d at 329. Such judgments are possible "where evidence shows a 'relatively mild physical impairment posing, to the layperson's eye, no significant restrictions." Giandomenico v. U.S. Soc. Sec. Admin., Acting Comm'r, 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017) (quoting Roberts v. Barnhart, 67 Fed. Appx. 621, 622-23 (1st Cir. 2003)). Here, the ALJ provided a detailed description of the effects of Plaintiff's various ailments. The ALJ also thoroughly discussed Plaintiff's examinations, procedures, and diagnoses from the alleged onset date through the date of the ALJ's decision.[3]

The ALJ found that the evidence in the record corroborates Plaintiff's joint disorders. Tr. 30. The ALJ examined imaging studies which show mild chronic rotator cuff tendinopathy, subacromial subdeltoid bursitis, non-displaced fracture of the lateral aspect of the humeral head

---

[3] The ALJ determined that Plaintiff's last insured date is December 31, 2026, given that Plaintiff's earning record shows that Plaintiff "has acquired sufficient quarters of coverage" to remain insured through that date. Tr. 23.

and widening of the acromioclavicular joint. Tr. 1357, 1745, 1754. Although the progress notes noted Plaintiff's pain on the right shoulder, decreased range of motion, bilateral feet pain, and osteoarthritic changes, the typical signs and symptoms associated to a disabling joint impairment were not present (i.e., chronic pain, fractures, large effusions, persistent swelling, dislocation of joints, and marked range of motion limitations). Tr. 30. The ALJ accounted for Plaintiff's surgery on both feet in 2013 and 2014 (well before the alleged onset date of disability) but noted that the most recent progress note from March 2022 reported a full range of motion without pain or tenderness in all joints and no gross gait disturbance. Tr. 2221, 2229. Overall, the most recent progress notes did not report significant difficulties with the right shoulder and/or bilateral feet. Tr. 2190-2251. Nevertheless, the ALJ addressed the joint disorders by reducing the work level to light and by including manipulative and postural limitations in the RFC.

      The ALJ also considered Plaintiff's bilateral carpal tunnel syndrome (CTS). Tr. 30. The electromyography (EMG) and nerve conduction velocity (NCV) tests evidence Plaintiff's CTS. Tr. 2221-22. Plaintiff's progress notes indicated pain in hands and wrists, numbness and tingling sensation, positive Tinel and Phalen signs bilaterally. Tr. 30. The ALJ, however, explained that the medical evidence did not include signs and symptoms associated with CTS, such as chronic wrist pain, chronic paraesthesia, burning sensation, persistent tingling sensation, decreased strength in hands, marked range of motion limitations, muscle weakness, or deformities of joints. To a greater extent, the record is unclear as to what treatment, if any, Plaintiff was receiving for CTS at the time. Nonetheless, the ALJ explained that she addressed the presence of CTS in the limitations included in the RFC. Plaintiff asks the Court to take a close look at Dr. Freytes' observations and Dr. Banchs' recommendations regarding bilateral CTS. But by asking the Court to look further into Dr. Freytes' observations and Dr. Banchs' recommendations regarding CTS, Plaintiff is asking the Court to do the impermissible: reweigh the evidence already evaluated by the ALJ. See Olivera-Bahamundi v. Comm'r of Social Sec., 2021 WL 1177339, at *6 (D.P.R. Mar. 29, 2021). The Court will abstain from following that path.

      The ALJ also considered the evidence related to Plaintiff's musculoskeletal impairments, which range from back spasm pain to bilateral plantar fasciitis. Tr. 29. The ALJ acknowledged Plaintiff's longstanding history of degenerative disc disease of the cervical and lumbar spine. Id. The ALJ noted the imaging studies that evidenced Plaintiff's spine and back pain: bilateral L3 radiculopathy, mild bilateral facet and ligamentum flavum hypertrophy with mild right

neuroforaminal stenosis at L3-L4, mild broad disc bulge at L4-L5, mild reversal of the cervical lordosis, and left L5-S1 radiculopathy. Tr. 29, 1349, 2216, 2219, 2224-25. Additionally, the ALJ noted that Plaintiff's progress notes showed that Plaintiff suffered signs and symptoms of neck pain, lumbar radiculopathy into the right leg, low back pain, and muscle spasms. Tr. 29. As a result of the foregoing, the ALJ determined that Plaintiff's spine disorder is severe. However, the ALJ subsequently explained that the evidence did not support the presence of a disabling musculoskeletal disorder. For example, the imaging studies reflected mild to moderate findings. Tr. 1349, 2216, 2219, 2224-25. Although Plaintiff experienced pain and discomfort, the prescribed treatment was mostly for the use of pain relievers, nonsteroidal anti-inflammatory drugs (NSAID), and anti-inflammatories with good results. Tr. 30.

In his reply brief, Plaintiff brings to the Court's attention that the ALJ disregarded evidence on the record concerning injections that were administered to him. Indeed, the ALJ stated in the decision that "[f]ar from a disabling musculoskeletal disorder, the record does not include evidence of other more aggressive treatment modalities, such as narcotic-based medicines, nerve blocks, steroid injections, acupuncture therapy." Tr. 30. But, as Plaintiff correctly points out, the record shows otherwise. The record contains evidence that on April 5, 2022, and April 26, 2022, Plaintiff received Celestone injections in the sacro-iliac joint area. Tr. 753, 2204. The ALJ did not consider evidence that may have impacted her findings and "failed to build an accurate and logical bridge from the evidence to [her] conclusion." Fontenelle ex rel. M.S. v. Astrue, 849 F.Supp.2d 784, 796 (N.D. Ill. Feb. 24, 2012). Although the ALJ is no required to provide a written evaluation of every piece of evidence, the ALJ must address all of the relevant evidence in reaching her conclusion. Id. And this, in Plaintiff's case, includes the steroid injections received by him to ameliorate his pain. While the evidence on the record could ultimately support a finding of non-disability, the Court finds that a remand is necessary "so that the ALJ may construct the logical bridge between the evidence and h[er] conclusions." Id.; Myles v. Astrue, 582 F.3d 672, 678 (7th Cir. 2009). The Court expresses no opinion about the decision to be made on remand.

### b. Mental RFC Assessment

Plaintiff also challenges the mental RFC determination. The ALJ found evidence that supports diagnoses of anxiety, depressive, and panic disorders. As such, when formulating the RFC, the ALJ determined that Plaintiff can perform simple routine tasks and work-related decisions. Additionally, Plaintiff can frequently interact with supervisors and coworkers, but never

with the public. Tr. 28, 32. The ALJ noted that Plaintiff did not have a history of crisis intervention or a full psychiatric hospitalization. But accounted for Plaintiff's partial hospitalization in November 2021 and June 2022, and his history of outpatient mental health services. Tr. 32, 405, 819, 1756-59, 1845, 2253, 2281-84, 2290-93, 2328-29. The ALJ clarified that, although during the partial hospitalization in June 2022 Plaintiff reported signs of psychosis, Plaintiff was given antipsychotics, and those symptoms had not been present during the previous twelve months. Tr. 33. The ALJ noted that Plaintiff showed depressed mood, insomnia, irritability, attention and concentration difficulties, anxiety, and panic attacks with palpitations, shortness of breath, tremors, and sweating. Tr. 1763, 1765-1842, 1843-52, 2281-2282, 2300-2544. But that his treatment throughout the years, which had consisted of pharmacotherapy, had good results. Tr. 32. In fact, Plaintiff concedes in his reply brief that "there was some documented improvement[,] but only after intensive outpatient treatment and extensive medication adjustments. [...] It was only after all of these medications that Plaintiff appeared to be less anxious and doing well overall[.]" Docket No. 17 at p. 5.

The ALJ found that the overall evidence in the record was consistent with the findings of Dr. Armando Caro, a psychiatrist and SSA consultive examiner. Tr. 1756-59. Dr. Armando Caro reported that Plaintiff was well groomed, walked assisted by a cane on his right hand, had good eye contact, had fluent, coherent, and logical speech, had a neutral mood, was oriented in time, place, and person, had denied suicidal ideations, and had fair concentration, judgment and insight. Tr. 1757. The ALJ noted that Dr. Armando Caro diagnosed Plaintiff with major depressive disorder, recurrent and moderate, and pain disorder secondary to general medical condition. Tr. 32, 1757. The ALJ found unpersuasive the opinions by mental health professionals Dr. Osvaldo Caro and Dr. Carlos Avilés. And the ALJ addressed Plaintiff's mental disorders by including mental limitations in the RFC.

Plaintiff sustains that his two partial hospitalizations and ongoing medication management were not fully considered by the ALJ. Docket No. 13. He seeks for the Court to rely on Dr. Osvaldo Caro and Dr. Carlos Aviles' medical opinions. But, as explained above, the Court will not reweigh evidence already evaluated and extensively discussed by the ALJ. Olivera-Bahamundi, 2021 WL 1177339, at *6; Evangelista v. Sec'y of Health and Humans Servs., 826 F.2d 136, 144 (1st Cir. 1997). And Plaintiff has not explained or demonstrated through evidence of record how this alleged symptom warranted the imposition of further functional limitations than those found by

the ALJ in the RFC. See Otero-Vicenty v. Comm'r of Soc. Sec., 2024 WL 1381402, at *10 (D.P.R. Mar. 31, 2024) (quotations omitted).

## IV.     Conclusion

After thoroughly and carefully reviewing the record, and for the reasons discussed above, the final decision of the Commissioner is **REMANDED** for administrative proceedings consistent with this opinion: the ALJ's consideration of evidence of Plaintiff's treatment with steroid injections (i.e., Celestone).

Judgment is to be entered accordingly.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 26th day of March 2025.

> s/Giselle López-Soler
> GISELLE LÓPEZ-SOLER
> United States Magistrate Judge